**MAIN CORNICE WORKS, INC., a corporation, Plaintiff,**

**v.**

**NATIONAL UNION FIRE INSURANCE COMPANY, a corporation, Defendant.**

**UNITED STATES of America, for Use and Benefit of CHARLES E. NOLAN PAINTING & DECORATING, Plaintiff,**

**v.**

**MAIN CORNICE WORKS, INC., et al., Defendants.**

**Nos. 64–1205, 65–438.**

United States District Court
S. D. California,
Central Division.

Sept. 16, 1966.

Anderson, McPharlin & Conners, Los Angeles, Cal., for Main Cornice Works, Inc. and United Pacific Ins. Co.

Robert E. Herrmann, Hollywood, Cal., for National Union Fire Ins. Co., and Charles E. Nolan Painting & Decorating.

## MEMORANDUM OF DECISION

BYRNE, District Judge.

Action No. 64–1205 WB was brought by Main Cornice Works, Inc., prime contractor on a housing project for the United States Navy at Long Beach, California, against the National Union Fire Insurance Company which, as surety, had issued its performance bond on behalf of a subcontractor, Charles E. Nolan, doing business as Nolan Painting and Decorating. In this action the plaintiff alleges that the subcontractor failed to complete his subcontract and the plaintiff was required to complete the work and demands the cost of completion in excess of the then contract balance in the amount of defendant's bond, i. e., the sum of $115,750, costs and reasonable attorney's fee.

Action 65–438 WB is an action by the subcontractor, Charles E. Nolan, against Main Cornice Works, Inc. and its surety on its Miller Act bond, the United Pacific Insurance Company. In this action the subcontractor claims the sum of $40,-583.09 for labor and materials allegedly supplied and unpaid for by the prime contractor. Main Cornice Works, Inc. counter-claims for the cost of completion in excess of the contract balance.

It is undisputed that in April, 1963, Main Cornice Works, Inc. and Nolan entered into a subcontract agreement under the terms and conditions of which Nolan agreed to perform painting work for the prime contractor; that National Union Fire Insurance Company as surety made, executed and delivered to Main Cornice Works, Inc. its subcontractor's bond in the sum of $115,750; that Nolan entered into the performance of the work provided to be done in accordance with his subcontract and furnished labor and materials therefor; that on March 24, 1964, Nolan gave Main Cornice notice of rescission of the subcontract, and thereafter discontinued all activities on the project.

The primary issue is whether Main Cornice materially breached its contract with Nolan and thereby justified Nolan's abandonment of the contract. Nolan claimed several breaches of the contract and offered evidence in support thereof, but his principal reliance is upon a lack of the necessary and basic requirements on the part of the prime contractor for the coordination of the project.

The evidence discloses that approximately 75% of the work required under the prime contract was subcontracted to

eight major subcontractors and a number of minor subcontractors. The record is replete with evidence of the prime contractor's failure to coordinate the work of the subcontractors. Almost every witness, including the witnesses called by the prime contractor, testified to the failure on the part of the prime contractor to coordinate the work of the subcontractors. This condition persisted to the time Nolan left the job, despite the fact that the chief government inspector and the various subcontractors repeatedly made complaints to the prime contractor.

Perhaps none of the other claimed breaches, including failure to timely pay progress payments; stopping payment on a payment check issued to Nolan; failure to maintain a sequence schedule, and failure to have the project properly prepared for the painter, would, in and of themselves, justify the abandonment of the contract. However, having occurred during the existence of conditions created by the abysmal failure of the prime contractor to provide the coordination and supervision which is a prerequisite to efficient and economical operation, their effect aggravated those conditions and the result as far as Nolan was concerned was catastrophic.

The record indicates that when Nolan undertook the performance of the painting work under the subcontract, he did not have a great deal of capital behind him. This perhaps accounts for the provision in the subcontract, i. e., "payments to be made weekly, said payments to be 90% of work performed in previous week". The failure of the prime contractor to *timely* make these progress payments and to *timely* pay for agreed extra work when compounded by the added expense resulting from the delays and failure to have the project prepared for painting when the painters were available on the job, created a vicious cycle which Nolan was unable to surmount. Joe Herman, President of Main Cornice, seemed to take a keen delight in seeing Nolan's checks to his employees and material men "bounce". On one occasion Main Cornice made a payment to Nolan

of $5000.00 in the form of a check. After the check was deposited and Nolan issued payroll checks in reliance on the deposit, Main Cornice stopped payment on the check. Several days later the stop payment advice was withdrawn.

Main Cornice contends that Nolan's action is barred by the provisions of the Miller Act as not having been commenced within one year after the date the claimant supplied the last of the labor or materials claimed by him. The action by Nolan was filed March 20, 1965. Nolan and two or three of his painters were on the job March 23 and March 24. The action was timely filed.

The Court finds that Main Cornice breached the contract and that Nolan, who was substantially injured by reason thereof, was justified in rescinding and abandoning the contract on March 24, 1964, but that there are no damages accruing to Nolan. The measure of a subcontractor's recovery after breach by the general contractor is the reasonable value of the work and materials furnished plus overhead and a reasonable profit. (See Continental Casualty Co. v. Schaefer, 173 F.2d 5 (CA 9)). In the instant case less than 50% of the work had been completed. Although Main Cornice failed to *timely* make payments of the amounts due Nolan, they *ultimately* paid him in full. It is stipulated in the pre-trial order that there was paid to Nolan or on his behalf the sum of $75,703.49. Nolan has been paid all that the record indicates he is entitled to.

Main Cornice is not entitled to recover by reason of the material breaches of its subcontract with Nolan which brought about its rescission. The rescission of the subcontract by Nolan discharged both Nolan and its surety National Union from any further liability under either the subcontract or the bond.

Both Main Cornice and Nolan claim attorney fees and stipulated in the pre-trial order that the attorney fee should be "as set forth in rule 12(b) of the Rules of the Superior Court of Los

Angeles County, State of California". Rule 12(b) provides for fees based on a percentage of money recovered in a contested case. In the instant case no party recovers a money judgment and no party is entitled to recover attorney fees.

No party is entitled to recover costs.

Counsel for National Union is requested to prepare, serve and lodge findings and judgment pursuant to local Rule 7.